## In re REFERENDUM PETITION NO. 31

### (Muskogee Free Fair Bill).

No. 9727—Opinion Filed April 23, 1918.

(172 Pac. 639.)

(Syllabus.)

**Statutes — Referendum Petition — Signatures — Validity.**

Petition was filed in the office of the secretary of state, purporting to contain the signatures of 16,800 legal voters of the state, the object of which was to invoke a referendum on Senate Bill No. 307 (Laws 1917, c. 19), pursuant to Const. art. 5, § 3, and Rev. Laws 1910, § 3368 et seq. The petition so to do required the signature of 14,821 legal voters of the state, together with the post office address and residence of each opposite his signature, 5,000 of which were omitted from sheets circulated at points in the state, far removed from each other, and the sheets sent to H. at Oklahoma City, who filled them in, apparently by guesswork. Held, that such was not a substantial compliance with the statute, and destroyed the presumption that said signatures were those of legally qualified electors, and hence the validity of the petition.

Appeal from Ruling of Secretary of State; J. L. Lyon, Secretary.

In the matter of Referendum Petition No. 31, State Question No. 95, Senate Bill No. 307 of 1917 Legislature, known as the Muskogee Free Fair Bill. From a ruling of the secretary of state sustaining the validity of the petition, Charles A. Moon, protestant, appeals. Protest sustained, and petition dismissed.

Chas. A. Moon and L. E. Neff, for plaintiff in error.

TURNER, J. On April 19, 1917, J. H. Everest, representing petitioners, filed in the office of the secretary of state copy of referendum petition No. 31, State Question No. 95; the object of which was to secure a referendum of Senate Bill No. 307, being an act of the 1917 Legislature known as the Muskogee Free Fair Bill, and on June 4, 1917, followed it up by also filing therein pamphlet petitions purporting to be signed by 16,800 voters of the state, asking a vote on said bill at an election to be held August 6, 1918, pursuant to Const. art. 5, § 3, and Rev. Laws 1910, c. 37, § 3368 et seq. On June 20, 1917, Chas. A. Moon duly protested against said petition on certain grounds later to appear, and thereafter both sides appeared by their said attorneys before the secretary, who heard testimony upon the protest. At the close of all the evidence, after said Everest, for himself and as attorney for petitioners, had, in effect. confessed the invalidity of the petition and moved the secretary for leave to withdraw the petition and dismiss the proceeding, to which no objection was made by opposing counsel, the secretary overruled the motion, sustained the validity of the petition, and protestants bring the proceeding here, where they have filed briefs. but which petitioners have failed and refused to do or resist in any manner a reversal of the rulings of the secretary.

Assailing the validity of the petition. the evidence discloses: That T. P. West, W. C. Adams, and 14 other persons testified that they were election officials in different precincts in Oklahoma City at an election held on May 8, 1917, for the purpose of voting bonds for the Oklahoma City Fair Association. That at that election referendum petitions were kept on the tables in the room where voters obtained their ballots and voted. That the attention of each voter was called to the referendum petition for the purpose of having him sign it. That the different officials at each precinct did this, and that the petitions were left on the tables with the election supplies at all times during the day. That the witnesses were absent from the room a part of the day and at various times engaged in their duties as such officials. and. therefore, unable to see each signer sign his name to the petitions. That when the polls closed some one of the officials in each precinct made the affidavits on the back of each pamphlet as required by law. Most of these affidavits were made in blank and filled in afterwards by some person unknown to the affiants. That the addresses of numerous signers were filled in during the day by various election officials when their duties as such officials did not require their time, and other addresses were afterwards filled in by some unknown party. Each of these 14 witnesses made all of the

affidavits to the pamphlets in their respective precincts.

The evidence further discloses that the witness Hemphill, a resident of Oklahoma City, and an employe of the Oklahoma City Fair Association, circulated pamphlet No. 0690 only, and was in charge of the referendum petition; that names were secured to the separate pamphlets throughout the state and sent to him in said city where he kept them until turned over by him, after checking same, to Mr. Everest for filing; that upon receiving these pamphlets, he filled in opposite perhaps 5,000 signatures the post office address of each signer; that the petition purported to contain 16,800 signers; that at the last state election the state candidate receiving the highest number of votes received 292,416, making it necessary for the petition to be signed by 14,621 voters; that there were 293 duplicate signatures, and that more than 2,400 names were signed thereto at the various election precincts in Oklahoma City at the election on May 8, 1917; that all the signatures thereto were obtained and the affidavits to the pamphlets made in the manner testified by the witness Adams, who checked the names on the petition with the list of registered voters kept in the office of the secretary of state, and that 6,140 of the signatures were not registered voters; that he checked the names of the signers from five counties outside of Pittsburg county, and those in that county residing in McAlester with the registration lists kept in the office of the county clerk of those counties, and that the names of 3,812 were not registered voters; that the addresses of at least 5,000 of the signers were written in as stated, and not in the signer's presence; and that addresses of signers from various portions of the state far removed are in the same handwriting. The witness Sawyer, 19 years old, lived at Chandler. He testified that on June 1, 1917, some man there employed him to circulate pamphlets numbered 0416, 0417, 0419, 0422, and 0423, which he did, and that the signatures he got were signed in the presence of no one but himself; that he did not make the affidavit to them, and did not know W. E. Vance, who did verify them, and that the man who employed him to circulate the pamphlets stayed in the bank while he went around town getting the signatures.

It is contended, among other things, that there is no way of determining whether each of the 5,000 signers in question was a legal voter of the state, and that the circular and signers having omitted to state their respective post office addresses and residence, Hemphill had no right, upon receiving these pamphlets sent by the circulators from various parts of the state, to write them therein opposite the name of the signer, for the reason that he could not have done so other than by guesswork, and that to do so was not a substantial compliance with the statute, and destroyed the presumption that the signatures were those of legally qualified electors of the state, and hence the validity of the petition. The point is well taken.

Rev. Laws 1910, § 3373, provides:

"Each sheet of every such petition containing signatures shall be verified on the back thereof in substantially the following form by the person who circulated said sheet of said petition, by his or her affidavit thereon and as a part thereof:

"'State of Oklahoma, County of ——, ss.

"'I, ——, being first duly sworn, say: (Here shall be legibly written or typewritten the names of the signers of the sheet) signed this sheet of the foregoing petition, and each of them signed his name thereto in my presence; I believe that each has stated his name, post office address and residence correctly, and that each signer is a legal voter of the state of Oklahoma and county of ——, or of the city of —— (as the case may be). (Signature and post office address of affiant.) Subscribed and sworn to before me this —— day of ——, A. D. 19—. (Signature and title of the officer before whom oath is made, and his post office address.)'"

And this, although Id. § 3393, provides:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

This for the reason that such is not a substantial compliance with section 3373, which contemplates that it is the duty of the circulator of the sheets to see that the proper address of the signers is placed on the petition, and hence to gain the information at the time to enable him so to do (State ex rel. v. Olcott, Secy. of State, 62 Or. 277, 125 Pac. 303), and not to circulate it throughout various and far distant parts of the state with such omitted and, after securing signatures thereto, to forward it to another at a central point, far removed, and leave it to him, presumably without information in the premises, to insert any address he may choose, as was done here. Besides, the aims of the statute requiring correct addresses of the signers is to enable a protestant of the petition to trace the signer for the purpose of determining his qualification to sign the

petition, and when this cannot be done, on account of the procedure adopted here, the statute is not substantially complied with, and the presumption that the signatures were those of legally qualified electors is prima facie destroyed.

It follows the procedure complained of is not a mere clerical error, and hence cannot be disregarded, and that the protest must be sustained, and the petition dismissed. It is so ordered.

All the Justices concur.