## IN RE REFERENDUM PETITION NO. 35, STATE QUESTION NO. 101; HOUSE BILL No. 509 OF THE 1919 LEGISLATURE.

No. 10998—Opinion Filed Jan. 6, 1920.

(Syllabus by the Court.)

**1. Initiative and Referendum—Referendum Petition—Signatures—Firm and Corporate Names.**

A firm, partnership, or corporation, as such, is not authorized by virtue of section 3392, Revised Laws 1910, to sign the firm or corporate name to a referendum petition which is intended to refer the act of the Legislature to the people, and where such firm or corporate name appears upon a petition for referendum, the same must be disregarded.

**2. Same—Duplication of Names.**

Where a name with the same initials and the same address as to the city, the street, and the street number appeared upon two separate petitions for referendum, the fact that said names and initials and addresses are identical is prima facie evidence that the same person has signed both petitions, and where there is no evidence to the contrary, it will be presumed that said name is a duplication and one of the names will be disregarded.

**3. Same — Petition — Verification by Circulator.**

A petition for referendum which is not signed and sworn to by the person who circulated said petition, does not substantially comply with section 3373, Revised Laws 1910, and said petition must be disregarded.

**4. Same—Signatures—Omission of Residence Address.**

Where a petition contains certain signatures with the post office address or residence omitted from the petition, said signatures are not in compliance with section 3368, Revised Laws 1910, and must be disregarded.

**5. Same—Necessity of Personal Signing.**

Where the signatures to referendum petitions all appear in the handwriting of one person, or are written in with the typewriter, such signatures are not in compliance with section 3392, Revised Laws 1910, and cannot be considered as legal signatures to said petition.

**6. Same—Defective Addresses.**

A signer upon a referendum petition who gives his street address or rural route, but fails to designate the city in which such street is located or town with which such rural route is connected, has not signed said petition as required by section 3368, Rev. Laws 1910, and such signatures cannot be counted.

**7. Same—Notice of Protest—Service.**

The written notice to the Secretary of State and to the party or parties who filed the initiative of referendum petition, embodying a protest against said petition, having been filed with the Secretary of State, it becomes his duty then and there to fix a day not sooner than five days thereafter in which to hear the same, and it is not essential that such notice be served otherwise upon the party or parties filing said initiative or referendum petition.

Appeal from Order of the Secretary of State.

Protest against Referendum Petition No. 35, State Question No. 101, on House Bill No. 509 of the 1919 Legislature. From order of Secretary of State sustaining petition, protestant appeals. Reversed, protest sustained, and petition ordered dismissed.

William Neff and L. F. Neff, for protestant.

J. C. Helms, for petitioners.

McNEILL, J. On June 27, 1919, there was filed in the office of the Secretary of State pamphlet petitions purporting to be signed by 10,618 voters of the state of Oklahoma, asking for a referendum on House Bill 509, which bill had been regularly passed by the Seventh Legislature of Oklahoma. Within ten days thereafter Henry Wood filed in the office of the Secretary of State a protest against the referendum petition, and for grounds of protest and objection stated:

First. That the petition does not bear the number of signatures required by law, and the signatures were not procured and certified in the manner provided by law.

Second. That the purported petition and alleged signatures are not authenticated and verified as required by law.

Third. That the purported petition is not in form as required by chapter 37, Rev. Laws 1910.

On August 14, 1919, the petitioners filed a motion to dismiss the protest, alleging that the protest had been abandoned. This was overruled, and the protest came on for hearing before the Secretary of State on October 1, 1919. On the trial of the case before the Secretary of State, the different petitions were all introduced in evidence, and the protestant and petitioners both offered oral evidence. After the introduction of evidence by both sides, on the 8th day of October, 1919, the Secretary of State made an order overruling the protest and sustaining the referendum petitions. On October 17, the protestant filed with the Secretary of State a written notice of appeal, and said cause was transmitted to this court, and was submitted to this court on the record and evidence taken before the Secretary of State and the briefs of the protestant and petitioner.

It is agreed between the parties, or at least the allegation is made and not contested in the brief, that the petitions, as filed, contain 10,618 names, and in order to refer said enactment of the Legislature it is necessary that the petitions should contain the signatures of 9,722 qualified signers, and the face of the petitions discloses that there are 896 more names thereon than are necessary to make the same a valid referendum petition.

We will take up the objections to the validity of the petition in the order they are briefed by protestant. The protestant first assails the petition by setting out in his brief 11 names which appear in different petitions that are not the names of individuals, but are the names of firms or corporations. Section 3392, Rev. Laws 1910, provides that the referendum petition may be signed by every person who is a qualified elector of the state of Oklahoma. There is no law that authorizes or permits a firm or corporation to sign as a firm or corporation. The petitions were introduced in evidence, and they disclose the fact that these 11 firms or corporations have signed in their firm or corporate names. It follows that said names should not be counted as qualified signatures on the petitions, and must be deducted from the total number of signatures appearing upon the petitions.

The second objection to the petitions is that 52 names are duplicated—that is, 52 persons have signed the petitions more than once. In support of this contention, there was evidence introduced that in Carter county ten names appear upon different petitions twice, and the protestant in support of his contention set out in his brief 42 additional names which show that the same are duplicated, one name appearing three times. The first name set out in the brief as a duplication appears as follows:

|  | Petition No. | Name No. |
|---|---|---|
|  | 2-82 | 8 |
| Duplicated | 5-56 | 10 |
| Name | | Address |
| M. M. Tate | | 2915 Classen |
| M. M. Tate | | 2915 Classen |

The other names are set out identically as the one above. It must be considered prima facie evidence that M. M. Tate, 2915 Classen, appearing on two different petitions, is one and the same person. The petitioners do not attempt in their brief to answer this question, or to controvert the fact alleged by the protestant. The petitions upon their face disclose prima facie evidence that the 52 names are duplicated. There being nothing to rebut said fact, it follows that said names must be considered duplicated, and the 52 names must be deducted from the number of names signed to said petition.

The protestant next assails seven petitions which contain 140 names for the reason the said petitions are not verified as required by law. Petitions Nos. 3-32, 3-35, 3-37, 4-35, 4-99, and 5-66 are objected to for the reason that same are not signed by the circulator, or, if so signed, are not signed by any notary public. Petition No. 4-51 is also objected to for the reason same is signed and acknowledged by T. D. Irving by Joe Dow. These petitions do not comply with section 3373, Rev. Laws 1910, and must be disregarded, and the 140 names appearing upon these seven petitions must be deducted from the total number.

The protestant next assails Petitions Nos. 3-17, 3-81, and 2-53 for the reason that the same were not signed by the various persons whose names appear thereon, but were all signed by one person; and protestant in support of his contention introduced the witness J. T. Thompson, who testified, as an expert on handwriting, that all the names appearing upon these petitions had been signed by one person—that is, one person signed the names of the alleged persons to Petition No. 3-17, and a different person signed all the names to Petition No. 3-81, and still a different person signed all the names to Petition No. 2-53. Objection is also made to Petition No. 1-95 for the reason the names were signed with a typewriter, and not by the person who purported to sign the petition, and upon these four petitions there are eighty names that should be disregarded.

The petitioners did not contest this fact in their brief. These four petitions were not signed as provided by section 3392, Rev. Laws 1910, therefore must be disregarded and the 80 names deducted from the total number of names appearing on the petition.

The protestant next assails the petitions for the reason it appears upon the face of the petitions that there are 306 signers who omit altogether to give any address. These names are set out in the brief of protestant, disclosing on what petition their names are signed and the number of the line on which the name appears on the petition. Section 3368 gives the form of referendum petition, and provides that each signer acknowledge the following fact:

"I have personally signed this petition, am a legal voter of the state of Oklahoma. My residence and post office are correctly written after my name."

This court, in passing upon a very similar question, in the case of In re Referendum Petition No. 31, Muskogee Free Fair Bill, 68 Oklahoma, 172 Pac. 639, states as follows:

"The aim of the statute requiring correct addresses of the signers is to enable a protestant of the petition to trace the signer for the purpose of determining his qualification to sign the petition, and when this cannot be done, on account of the procedure adopted here, the statute is not substantially complied with, and the presumption that the signatures were those of legally qualified electors is prima facie destroyed."

The Supreme Court of Oregon, in the case of State ex rel. v. Olcott, 62 Ore. 277, 125 Pac. 303, stated as follows:

"It is the duty of the circulator of a referendum petition to see that the proper address of the signers thereto is placed on the petition."

The signers, having failed to designate their residence or post office, have not substantially complied with the provisions of the law, and said 306 names must be deducted from the total number of the names.

The protestant next objects to 358 names which appear on the different petitions where the person signing has failed to give his post office address. The signer has designated the street and number or the rural route, but has failed to designate what city or town to which the street address refers, or what town the rural route is connected with. The protestant sets out the names of said signers and the number of the petition upon which said names are found. These signers are subject to practically the same objection as the signers who gave no address. The cases of In re Referendum Petition No. 31, supra, and State ex rel. v. Olcott, supra, are cases supporting the theory that these

names should be disregarded on the petition. The Supreme Court of Michigan, in the case of Thompson v. Vaughan, 159 N. W. 65, in passing upon a similar question said:

"The evident purpose of these provisions is to prevent duplication of signatures, and the fraudulent use of the referendum by persons who are not electors. And to make these results more certain it is required that the sections circulated in any county or city shall be signed only by electors residing in such county or city. To secure the results aimed at by the Constitution each of these requirements must be strictly observed. It cannot be inferred that a section was circulated in a certain county or city from the fact that a majority, or all, of the signers gave their residences as in that county or city. Nor can it be inferred that the signers resided in a certain county or city from the fact that the section was circulated in such county or city. To permit either inference would defeat the object of the constitutional provisions. The place of circulation and the place of residence must each be shown by itself on every section, and the signatures cannot be counted on a section which does not thus show where it was circulated, nor can a signature be counted on any section unless it is followed by the signer's residence and voting precinct."

The 358 signers having failed to comply with the statute in giving their post office addresses, they cannot be counted as qualified signers to said petition, and the names must be disregarded. This makes a total of 947 names upon the petition which must be disregarded. Deducting the 947 names from the 10,618 names leaves only 9,671 names, and not sufficient to be a legal petition, as it is stated, and without contradiction, that the petition, in order to be valid, must contain 9,722 names.

In addition to the above names, the protestant alleges there are 267 signers who gave as their residence a place where no one resides, and an additional 568 names in cities of over 10,000 which failed to give a street address; also that numerous women had signed, who were not qualified electors; also that some 4,000 names of persons appear on the petition who were not qualified electors, for the reason they had not registered to vote. It is unnecessary for us to pass upon this question, as elimination of the 947 names leaves the petition insufficient.

The petitioners first suggest in their brief that the protestant, Henry Wood, has filed his protest as Commissioner of Highways of the State of Oklahoma, and not as an individual; but there is no merit in this contention, as the petition is signed by him as an individual, and not as an officer.

It is next contended that the record shows no service of notice on petitioners by pro-

testant of filing his protest. As to whether any notice was served or not, does not appear from the record, and could not be raised at this time, for the petitioners entered a general appearance to the motion. This court in Re Initiative State Question No. 10, 26 Okla. 554, 110 Pac. 647, has held contrary to the contention of the petitioners.

The protest was filed July 7. 1919, and was not heard until October 1, 1919. The petitioners filed a motion on the 14th of August to dismiss said protest for the reason protestant had abandoned the same, which motion was overruled. The petitioners now contend that the Secretary of State lost jurisdiction for the reason the protest was not heard at once, and they rely upon the case of Russell v. Harrison, 33 Okla. 225, 124 Pac. 762. This case, however, does not sustain the contention of petitioners. While the court in that case stated it is mandatory for the Secretary of State, after five days, to proceed to have an immediate hearing upon the protest, and that mandamus will lie to compel the Secretary of State to hear said protest, yet the court does not state or hold that the failure of the Secretary of State to hear the protest ousts the secretary of jurisdiction.

The third proposition briefed by the petioners is, there is no legal evidence offered by the protestant. There is no merit to this contention. In the discussion of the proposition herein we have pointed out the evidence material thereto; all of which is competent and legal, most of the same being apparent from an examination of the petitions themselves.

Petitioners next contend that this court failed to hear the case within ten days and therefore lost jurisdiction. This contention is likewise frivolous, as the record discloses the case was filed in this court on the 18th day of October, and on the 17th day of November the protestant filed his brief, and on the 28th day of November filed a motion to advance the cause, and on December 5th the petitioners were given 15 days' additional time to file a typewritten brief. It certainly could not be contended that petitioners, having asked additional time in which to file their own brief, could now be heard to say that the court should have heard the case at an earlier date. The record further discloses that the case was submitted on the 22nd day of December, and on said date the petitioners were again given permission to file their brief instanter, so, if there has been delay in this court, the petioners have been as much responsible for the same as the court, and cannot set up their own acts in asking for delay and then suggest that the court by reason of said fact

has lost jurisdiction by permitting petitioners to have additional time to prepare their case.

For the reasons stated, the petition is insufficient, and the Secretary of State is directed to sustain said protest and dismiss the petition for referendum.

OWEN, C. J., and RAINEY, PITCHFORD, JOHNSON, and HIGGINS, JJ., concur.