## WHITSON v. CITY OF KINGFISHER.

No. 25712.  Jan. 28, 1936.

Rehearing Denied February 25, 1936.

Carl Whitson, for plaintiff in error.

E. M. Bradley, for defendant in error.

PER CURIAM. This is an action brought in the district court of Kingfisher county, Okla., by Carl Whitson, as plaintiff in error, against the city of Kingfisher, a municipal corporation, as defendant in error. The parties will hereafter be designated as they appeared in the trial court.

Upon April 10, 1934, the plaintiff filed his action in the district court of Kingfisher county against the defendant for an injunction seeking to restrain the defendant from enforcing a certain ordinance of the city of Kingfisher, by which ordinance the defendant claimed that the maintaining, keeping and conducting of a "snooker parlor, or hall" was prohibited.

In addition to the petition, upon said date the plaintiff filed a motion in said cause seeking the issuance of a temporary injunction against the defendant and its agents, restraining them from interfering with the plaintiff in the business of maintaining and keeping said snooker hall. On the 12th day of April, 1934, O. C. Wybrant, district judge, issued an order of temporary injunction restraining the defendant and its officers from interfering with such business of said plaintiff, and restraining said defendant and its officers from arresting the plaintiff, or any of his agents, because of the operation of said snooker parlor or hall.

The only ordinance of the city of Kingfisher in existence at that time which could be conceived to apply to snooker parlors was what was known as ordinance No. 376, which was as follows:

"Section 1. It shall be unlawful for any person to keep, open, establish, conduct, maintain, manage, operate or carry on within the limits of the city of Kingfisher, Okla., any billiard and pool room, hall, or place wherein any billiard, pool, combination billiard and pool, croquet, billiard or pool, Jenny-Lind, bagatelle. or pigeon-hole table or tables and any billiard or pool tables upon which croquet, so called, is played with cues, balls and wickets, and any other pool and billiard tables upon which any game is played with cues and balls and any devices whatsoever, are or may be kept or operated for hire; and each day any such hall. room or place is open, operated, maintained or carried on shall constitute a separate unlawful act and offense.

"Section 2. It sha'l be unlawful for any person to keep or operate any billiard, pool, combination billiard and pool, croquet billiard or pool, Jenny-Lind, bagatel'e or pigeonhole or tables, or any billiard or pool or other tables upon which croquet or hinge-pin or any other game is played with cues and balls, or played with cues and bal's aided by any other device whatsoever, in any public place in the city of Kingfisher, Okla.; and each day any such table or tab'es, or devices or contrivances are kept in any public place in said city shall constitute a separate unlawful act and offense."

In granting the temporary injunction the trial judge must have reached the conclusion that ordinance No. 376 did not apply to snooker halls. parlors, and snooker tables. It is not clear to us by what line of reasoning the trial judge reached such conclusion. It would seem that ordinance No. 376 was in all respects a valid exercise of the police powers of the city, and was sufficiently broad to cover snooker parlors and halls and was sufficiently definite to prohibit their operation.

The original answer of the defendant, after pleading certain portions of the charter of the city of Kingfisher, pleads ordinance No. 376, which we have heretofore quoted, and alleges that said ordinance prohibited

.the operation of snooker parlors or halls of the plaintiff. This answer was filed on the 18th day of April, 1934.

Thereafter, on the 7th day of May, 1934, the board of commissioners of the city of Kingfisher enacted ordinance No. 400, which is as follows:

"Section 1. That it shall be unlawful for any person or persons to keep open, conduct, manage, operate, maintain or carry on within the limits of the city of Kingfisher, Okla., any parlor, room, hall, or other public place of any kind or character whatsoever, wherein any snooker table or tables, or tables equipped with pockets and also used for playing the game of snooker are kept for hire, and upon which table or tables the game of snooker is played for hire paid by persons participating in such game or games; and each and every day any such parlor, hall, room or public place is so kept, open, conducted, managed, operated, maintained or carried on for hire in any public place in said city shall constitute a separate and distinct offense.

"Section 2. That it shall be unlawful for any person whomsoever, acting as a servant or employee or any person or persons engaged in said prohibited business or occupation, to aid or assist in violation of any of the provisions of section 1 of this ordinance, and each and every day any such servant or employee aids or assists in violating any of the provisions of section 1 of this ordinance shall constitute a separate and distinct unlawful act and offense.

"Section 3. That any person who shall violate any of the provisions of either section 1 or section 2 of this ordinance shall upon conviction thereof be punished by a fine of not less than $10 or not more than $20, including in such fine to be so imposed the costs of the action.

"Section 4. That all ordinances and parts of ordinances in conflict herewith will be repealed when this ordinance becomes effective.

"Section 5. For the immediate preservation of the public peace, health and safety an emergency is hereby, declared to exist, and by reason thereof this ordinance shall become operative and in full force and effect immediately after its passage, approval and publication."

This ordinance was published for the first time on the 10th day of May, 1934. The minutes of the board of city commissioners of the city of Kingfisher for May 7, 1934, reveal that ordinance No. 400, prohibiting snooker parlors, was read, considered first as to the title, then section by section, and then as to the whole, and that the title and each section of the entire ordinance were separately read and on motion carried and approved separately, and that then the ordinance was read and adopted as a whole.

It further appears that on the 15th day of March, 1934, a so-called initiative petition was filed with the city clerk of the city of Kingfisher, or with the board of commissioners, requesting the board of commissioners to submit the question of legalizing and licensing snooker parlors to the people of said city at the next election. This so-called initiative petition was filed only 15 days before the next general election in the city, and was signed by 280 people. On May 15, 1934, the defendant filed its supplemental answer setting up the passage and existence of ordinance No. 400 prohibiting the maintaining of snooker parlors and halls in the city of Kingfisher.

On the 17th day of May, 1934, the defendant filed a motion to dissolve the temporary injunction, which had theretofore been granted plaintiff, and as grounds for said motion alleged the passage and existence of said ordinance No. 400, prohibiting snooker parlors. The matter came on for trial on June 2, 1934, before a different judge from the one who had granted the temporary injunction. At the trial, among other things, proof was made that snooker was played upon tables substantially similar to pool and billiard tables and with cues and balls substantially the same as pool and billiard cues and balls, and was played in substantially the same manner as pool or billiards. It further appears that within three or four days after the enactment of ordinance No. 400, the plaintiff filed with the city clerk what is called in this record by the plaintiff, a referendum petition; that in fact this paper was on the back of a check or some other similar character of paper, written in longhand and signed only by the plaintiff and one other person. This document does not appear in the record

At the conclusion of the trial the court entered its judgment and by that judgment found that ordinance No. 400 was in full force and effect, and was valid and prohibited the maintenance of snooker halls and parlors in the city of Kingfisher, Okla., and that by reason of the existence of said valid ordinance the plaintiff was not entitled to any injunctive relief. This trial court accordingly dissolved the temporary injunction and denied the petition of the plaintiff for a permanent injunction. From this judgment the plaintiff appeals to this court.

In his brief the plaintiff makes a number

of contentions, only a few of which will be found necessary to consider.

The plaintiff contends, first, that the board of commissioners of the city of Kingfisher were without authority to enact an ordinance prohibiting the operation of snooker halls. Second, that because the so-called initiative petition was not submitted at an election to the vote of the city of Kingfisher, ordinance No. 400 is inoperative and invalid. Third, that because of the filing of the paper designated the referendum petition ordinance No. 400 is suspended. Fourth, that 30 days had not elapsed from the date of the publication of ordinance No. 400 to the judgment of the trial court, and that said ordinance was not correctly passed as an emergency ordinance, and consequently was not in force at the time of the trial court's judgment. Fifth, that ordinance No. 400 was void because prescribing a higher penalty for its violation than is permitted by the Constitution of this state.

We now proceed to discuss those propositions in order:

(1) It is without question that equity will restrain by injunction a criminal action under an invalid ordinance or statute, which if allowed to proceed will destroy property rights and inflict irreparable injury. Whitson v. City of Cherokee, 173 Okla. 208, 46 P. (2d) 907; Stout v. Pardoe, 128 Okla. 3, 261 P. 366.

The record in this case discloses that snooker is played upon tables in all respects substantially the same as pool and billiard tables. In fact a portion of the tables of plaintiff were converted pool or billiard tables.. The game "snooker" is played with balls and cues practically the same as those used in playing pool or billiards. There are pockets in the snooker tables similar to those in ordinary pool tables. To the ordinary observer it would appear to be the same game as pool or billiards. These facts are practically undisputed in this record. It is not necessary to decide whether or not the charter of the city of Kingfisher authorizes the board of commissioners to enact ordinances prohibiting the maintaining of snooker parlors. Section 5998, O. S. 1931, reads as follows:

"The city council of each city of the state and the board of trustees of each incorporated town or village shall have power to enact ordinances to restrain, prohibit and suppress games and gambling houses, bowling alleys. pool and billiard tables, and other gambling tables."

In the recent case of Whitson v. City of Cherokee, 173 Okla. 208, 46 P. (2d) 907, the

Supreme Court of this state decided the identical question involved here and laid down the rule that the city of Cherokee, by virtue of section 5998, supra, had the authority to pass an ordinance prohibiting the keeping and maintaining of a snooker hall or parlor. That decision is decisive here, and we accordingly hold that the city of Kingfisher by virtue of such statute was authorized to pass ordinances prohibiting the maintaining and conducting of snooker halls or parlors such as that maintained by the plaintiff.

This being true, the next question to be considered is whether or not there was at the time of trial or is now in existence a valid ordinance of the city of Kingfisher prohibiting the maintenance of snooker halls or parlors.

(2) At the time of the granting of the order of temporary injunction against the defendant, there was in existence ordinance No. 376, heretofore quoted.

Under the authority of Whitson v. City of Cherokee, supra, we are convinced that the above-quoted ordinance was valid and was sufficiently definite and broad to include the game of snooker and to prohibit the maintaining, etc., within the city of Kingfisher, all halls or places where such games were played for hire. This being true, the trial court, which originally heard the matter, should have denied plaintiff's motion for temporary injunction, and upon final trial should have denied any relief to plaintiff under his petition for a permanent injunction.

(3) After the temporary injunction had been granted to plaintiff the board of commissioners of defendant city passed ordinance No. 400, specifically prohibiting the game of snooker. One of the objections raised by plaintiff to this ordinance is that prior to its passage and prior to the general election at which city officers were to be elected, he had filed an initiative petition requesting that the question of legalizing snooker halls be submitted to a vote of the people. The record discloses that this petition was signed with 280 names and was filed only 15 days immediately prior to said general election. There is nothing in the record to show any provision in the city charter of defendant for the exercising of initiative and referendum powers. This being true. citizens desiring to initiate a proposition must comply with the statutes of this state upon the subject. In re Initiative Petition No. 2 of Cushing, 157 Okla. 54, 10 P. (2d) 271.

Section 5872, O. S. 1931, prescribes the verification that must accompany the initiative petition, and according to the record this initiative petition did not comply with this section of the statute.

Section 5874, O. S. 1931, prescribes that before such a petition shall be circulated or signed by the electors a copy of same shall be filed in the office of the proper authority of the city, in this case the chief clerk, and that within 90 days after the filing of same the original petition shall be filed in said office. This section of the statute was not complied with by the attempted initiative petition before us.

A failure to comply substantially with the statute governing the initiation of propositions renders invalid such petition. In re State Question 138, Initiative Petition No. 89, 114 Okla. 285. 244 P. 801; In re Referendum Petition No. 35, 78 Okla. 47, 186 P. 485; In re Referendum Petition No. 31, 68 Okla. 147, 172 P. 639.

We therefore hold that the initiative petition filed here failed to substantially comply with the statutes upon the subject, and was of no force and effect. and could in no wise affect the validity of ordinance No. 400 of the city of Kingfisher.

Neither was said petition filed far enough in advance of the general election to allow compliance with the statutes of this state, and in particular sections 5874, 5887 and 5890, O. S. 1931, and therefore the city authorities of defendant were justified in refusing to submit same at the general election, which was held 15 days after the filing of said petition.

(4) Another objection raised to the validity of ordinance No. 400 by the plaintiff is that within two or three days after its passage he filed with the proper officers of the city a referendum petition. The record shows that within two or three days after the passage and publication of said ordinance the plaintiff filed a paper written in longhand, asking that said ordinance be submitted at a referendum election. This paper was signed only by the plaintiff and one other person. Such attempted referendum petition was totally insufficient to meet the requirements of either the Constitution of this state, or the statutes of this state governing referendum petitions.

By article 18, sec. 4(b), it is required that every petition for referendum in the governing of municipal corporations shall be signed by 25 per cent. of the qualified electors who voted at the next preceding election. Of course, this petition did not comply with such provision. It was not verified, as required by section 5872, O. S. 1931. A referendum petition which is not signed and sworn to, as required by the statute, is invalid for any purpose. In re State Question No. 138, supra; In re Referendum Petition No. 35, supra; In re Referendum No. 31, supra.

This referendum petition being invalid for the reasons given, it did not and could not have the effect of suspending the operation of ordinance No. 400, until such time as same shall be voted at a referendum election in said city, and therefore in so far as said referendum petition is concerned, said ordinance at once became operative after its passage and publication.

(5, 6, 7) The plaintiff further contends that the ordinance in question was invalid as an emergency measure because the emergency section was not voted upon separately and ruled upon separately as required by section 5889, O. S. 1931. Such statute does provide that no emergency measure shall become immediately operative unless the emergency section shall be ruled upon separately and approved by the affirmative vote of three-fourths of all the members elected to the city council. The record does not bear out the plaintiff's contention. The minutes of this board of commissioners of the city of Kingfisher reveal that this ordinance was first read and considered as to the title and section by section, and then as to the whole, and that each section of said ordinance, including the emergency section, was separately read and separately considered and approved by the vote required by the statute, and that then the ordinance was passed as a whole by the board of commissioners. This action is a sufficient compliance with the statute, in order to become effective as an emergency measure.

However, in the event it should be considered that the emergency clause in this ordinance was not effective, such ordinance would become operative at the expiration of 30 days from its passage and publication, and the ordinance was in existence during the entire period of 30 days, even though inoperative. This matter has been decided by this court in the case of City of Coalgate v. Gentilini, 51 Okla. 552, 152 P. 95.

It is also contended by the plaintiff that the ordinance is invalid and void, because, under the law in this state, a city may not by ordinance impose a greater punishment than $20 including the fine and costs. The ordinance by its exact terms does not im-

pose a larger fine, including costs, than $20. Section 3 of said ordinance provides in substance that any person violating same shall be punished by a fine of not less than $10 and not more than $20, included in said fine so to be imposed the costs of this action. The clear meaning of this provision is that the highest punishment that may be assessed under the ordinance is a fine of $20, including the costs. In other words, under this ordinance, both the fine and costs may not exceed $20. Such penalty is in accordance with the law of this state. Ex parte Flannery, 21 Okla. Cr. 134, 205 P. 203; Ex parte Bochmann, 20 Okla. Cr. 78, 201 P. 537; Ex parte Johnson, 20 Okla. Cr. 66, 201 P. 533.

(8) At the time when the temporary injunction was granted ordinance No. 400 had not been passed by the city of Kingfisher. After its passage a supplemental answer was filed by the defendant setting up the existence of said ordinance, and a motion to dissolve the temporary injunction setting up said facts was also filed. The rule is well-established that when a preliminary injunction has been granted it will be dissolved when the reasons for it have ceased to exist. 32 C. J. sec. 686.

The rule is well established also that an injunction will be dissolved where subsequent to its issuance a statute which legalizes the acts restrained is enacted. Pennsylvania v. Wheeling Bridge Co., 18 How. 421, 15 L. Ed. 435; In re Jackson, 9 Fed. 493; Half Moon Bridge Co. v. Canal Board, 164 App. Div. 919, 149 N. Y. S. 1085; Hodges v. Snyder (S. D.) 186 N. W. 867.

At the present time ordinance No. 400 of the city of Kingfisher, regardless of the validity of its emergency section, is in full force and effect, and is a valid exercise of the police power by the municipality. Therefore, the acts of the city authorities sought to be restrained by the plaintiff are legal and justified.

There being no error presented by the record in the judgment of the trial court, the same is affirmed.

The Supreme Court acknowledges the aid of Attorneys H. R. Young, S. J. Montgomery, and Eugene Monnet in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Young, and approved by Mr. Montgomery and Mr. Monnet, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, CORN, and GIBSON, JJ., concur.