## In re INITIATIVE PETITION NO. 9, CITY OF OKLAHOMA CITY.

No. 28452.    May 9, 1939.

Rehearing Denied May 23, 1939.

W. A. Carlile, for proponents.

Edward M. Box and Floyd H. Norris, for protestants.

PER CURIAM. This is an appeal by Owen F. Renegar et al., proponents of Initiative Petition No. 9 of Oklahoma City, from a decision of the city clerk of said city which sustained a protest of C. B. Williams et al. to the sufficiency in form of said petition.

The record shows that on November 3, 1937, the proponents filed with the aforesaid city clerk a copy of an initiative petition and attached thereto a notice which stated that said petition would be circulated for the purpose of obtaining the necessary signatures of qualified electors thereon; that on November 16, 1937, the proponents filed with the said city clerk pamphlet forms of said petition which had been circulated and which bore approximately 9,800 signatures. The petition so filed and circulated was, omitting the proposed amendments, substantially in the following form:

"Initiative Petition No. 9

" 'WARNING'

" 'It is a felony for anyone to sign an initiative or referendum petition with any name other than his own, or knowingly to sign his name more than once for the measure, or to sign such petition when he is not a legal voter.'

"Twenty names only allowed on a petition.

"To the Honorable Mayor of Oklahoma City "Oklahoma City, Oklahoma.

"We, the undersigned, citizens and legal voters of the State of Oklahoma and the City of Oklahoma City, County of Oklahoma, respectfully order that the following proposed amendments to the City Charter shall be submitted to the legal voters of the City of Oklahoma City, County of Oklahoma, State of Oklahoma, for their approval or rejection at the next regular city election or at a special election to be held as soon as possible, and each for himself says: 'I have personally signed this petition; I am a legal voter of the City of Oklahoma City, County of Oklahoma, State of Oklahoma; my residence and Post Office address are correctly written after my name'. The time for filing this petition expires January 29, 1938. The question we herewith submit to our fellow voters is: Shall the following proposed amendments to the City Charter be adopted?:

"Amendments of Article II; Sections 1, 2 and 27 of Article IV; Section 2 of Article VII and Articles X and XI of the Charter of the City of Oklahoma City, Oklahoma, relating to the legislative department, the duties of city employees, preparation of budget, holding primary, run off and general elections, and construction of Charter; amendment of the charter as a whole by repealing Section 3 of Article IV, relating to duties of City Manager; Article V, relating to the manner of adopting ordinances, publication and enrollment thereof, and admission of same as evidence; and Section 10 of Article IX relating to the holding of elections; providing for partisan government, placing administration and executive power in the Mayor, abolition of present offices of Mayor and Councilmen and of City Manager and Assistant City Manager by constituting a new governing body composed of Mayor and Council, giving to same only two-year term of office, providing change of salary for Mayor and providing for the election of the Police Judge and Police Chief at salaries of $4,000 a year each.

"AMENDMENT OF ARTICLE II

"That Article II of the Charter of the City of Oklahoma City, Oklahoma, be and the same is hereby amended to read as follows:

\* \* \* \*

(Here appear 20 blank spaces for name, residence and post office addresses.)"

And certificate page as follows:

"STATE OF OKLAHOMA
"COUNTY OF OKLAHOMA ss.

"I, _____, being first duly sworn, say (Here shall be written legibly or typewritten the names of the signers on the reverse side of this sheet) (here follow 20 blank spaces for 20 names) signed this sheet of the foregoing petition, and each of them signed his name thereto in my presence, I believe that each has stated his name, post office address and residence correctly, and that each signer is a legal voter of the State of Oklahoma.

"_____
"_____ Street
"(Post Office Address) Oklahoma
"City, Oklahoma.

"Subscribed and sworn to before me this _____ day of _____ A. D. 1937.
"_____
"Notary Public
"(Seal)
"My Commission expires _____"

Notice of the filing of said petition was thereupon duly given by the city clerk to all persons who might desire to protest the same. Two protests were filed against the petition. At the hearings held by the city clerk said protests were merged and the protestants urged that said petition

was insufficient in form, first, on account of failure to contain an enacting clause such as required by section ·3, art. 5, of the Constitution, in the style of all bills; and, second, on account of omission from the certificate page of the words "and City of Oklahoma City"; and third, that the required number of signers should be ascertained by reference to the last preceding general state rather than the last preceding municipal election, and that when so ascertained was insufficient. The city clerk sustained the first two contentions made by the protestants and declined to rule on the third contention. The parties, however, stipulated that if the last preceding municipal election was to be used in ascertaining the required number of signers, then said petition contained sufficient signers, otherwise it did not.

The proponents contend here that the requirement of section 3 of art. 5 of the Constitution has no application to a petition such as is here under consideration and that the petition complies substantially with the requirements of the statute and that the omission of the words "and city of Oklahoma City" from the certificate page constitutes at most a mere irregularity and that the requirement of section 4 (b) of art. 18 of the Constitution with reference to the number of signers relates to the next preceding municipal election, and that hence under the stipulation of the parties the petition contained the required number of signers.

Sections 3(a) and 3(b) of article 18 of the Constitution and sections 6424 and 6425, O. S. 1931 (11 Okla. St. Ann sec. 558), authorize any city containing a population of more than two thousand inhabitants to frame a charter for its government and control the procedure to be followed in so doing. Broshears v. Robertson, 158 Okla. 47, 12 P.2d 532; Fuller v. Getz, 168 Okla. 617, 36 P.2d 265. A charter adopted by a city in the manner thus provided becomes the organic law of said city, and if it contains a provision for its amendment, it is thereafter subject to amendment only in the manner thus provided. State ex rel. Reardon v. Scales, 21 Okla. 683. 97 P. 584; Lackey v. State ex rel. Grant, 29 Okla. 255, 116 P. 913; In re Initiative Petition, City of Okmulgee, 89 Okla. 134, 214 P. 186; Caruth v. State ex rel. Tobin, 101 Okla. 93, 223 P. 186; Foster v. Young, 149 Okla. 19, 299 P. 162. In obedience to the requirement of the Constitution (section 3(a) art. 18) we take judicial knowledge of the fact that on March 11, 1911, the

voters of Oklahoma City adopted a charter pursuant to the above-cited constitutional and statutory provisions and provided. for its amendment by embodying therein those portions of the Constitution and the then existing statutes which related to the amendment of a charter by municipalities. (Ruth v. Peshek, 153 Okla. 147, 5 P.2d 108.) Therefore the sufficiency of the petition here involved must be determined by reference to said constitutional and statutory provisions. Section 3(a), art. 18, of the Constitution provides in part as follows:

"The charter so ratified may be amended by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof (or by petition. as hereinafter provided)."

The petition referred to in the above-quoted section has reference to the power of the initiative as reserved to the people of every municipal corporation by section 4(a), art. 18, of the Constitution, and concerning which section 4(e) of art. 18 of the Constitution expressly provides as follows:

"When such petition demands an amendment to a charter, the chief executive officer shall submit such amendment to the qualified electors of said municipal corporation at the next election of any officers of said corporation and if, at said election, a majority of said electors voting thereon shall vote for such amendment, the same shall thereupon become an amendment to and a part of said charter, when approved by the Governor and filed in the same manner and form as an original charter is required by the provisions of this article to be approved and filed."

Such petition has for its purpose the submission of proposals (such as the legislative authority is authorized to submit by section 3(a), art. 18, supra) for the amendment of the charter to the voters of said municipality for their adoption or rejection rather than the enactment of legislation, in the sense which that term is ordinarily employed. The charter, when adopted in the first instance, becomes the organic law of the municipality only after its adoption by the voters and after it has been submitted to and approved by the Governor (section 3(a), art. 18, supra); and any amendments which the voters may thereafter make to such charter become effective only in the same manner (section 4(e), art. 18, supra). As said in the case of Ex parte Hudson, 3 Okla. Cr. 393, 106 P. 540:

"The provision that 'The style of all bills shall be "Be it enacted by the people

of the State of Oklahoma," ' both in its language and the position which it occupies in the Constitution, suggests the idea that its operation was intended to be confined to those bills which are initiated and enacted by the direct vote of the people, under the reserved powers of the people to enact laws independently of the will of the Senate and House of Representatives."

We think it manifest that said provision of section 3, article 5, supra, was never intended to apply to a proceeding which has for its purpose the amendment of the charter or the basic law of a municipality. We therefore hold that the petition here involved was not subject to the requirements of said section 3, article 5, of the Constitution.

Our next query is addressed to the effect, if any, which the omission of the words "and City of Oklahoma City" from the verification provided for the circulators had upon the form of the petition. Section 5872, O. S. 1931, 34 Okla. St. Ann. sec. 6, reads as follows:

"Verification of signatures

"Each sheet of every such petition containing signatures shall be verified on the back thereof, in substantially the following form, by the person who circulated said sheet of said petition, by his or her affidavit thereon and as a part thereof:

"State of Oklahoma
"County of _____. ss.

"I, _____ being first duly sworn, say: (Here shall be legibly written or typewritten the names of the signers of the sheet), signed this sheet of the foregoing petition, and each of them signed his name thereto in my presence; I believe that each has stated his name, postoffice address, and residence correctly, and that each signer is a legal voter of the State of Oklahoma and county of _____ or the city of _____ (as the case may be). (Signature and postoffice address of affiant). Subscribed and sworn to before me this _____ day of _____ A. D. 19_____

"(Signature and title of the officer before whom oath is made, and his postoffice address)."

It will be observed that the form of the verification thus prescribed concludes as following: "and that each signer is a legal voter of the State of Oklahoma, and County of_____ or the City of _____ (as the case may be)."

That the Legislature had a definite purpose in view when it prescribed this requirement is evident when reflection is had upon the several constitutional provisions which reserve the powers of the initiative and referendum. Under section 1, of art. 5 of the Constitution, the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independently of the Legislature, and also reserve the power at their own option to approve or reject at the polls any act of the Legislature. By section 5 of the same article the powers reserved to the people of the state at large are further reserved to the legal voters of every county and district therein as to all local legislation, and by section 4(a), art. 18, of the Constitution it is further provided:

"The powers of the initiative and referendum, reserved by this Constitution to the people of the state and the respective counties and districts therein, are hereby reserved to the people of every municipal corporation now existing or which shall hereafter be created within this state, with reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the provisions of this Constitution."

It is therefore manifest that the framers of the Constitution had in mind and intended that the powers of the initiative so reserved should be exercised either by the voters of the state at large or those of counties or districts therein in connection with local legislation and by the voters of municipal corporations in the exercise of legislative authority and amendments to charters which they may have adopted for their own government. Therefore the Legislature provided a form of verification which could be easily adapted to any one of the situations under which the powers so reserved might be exercised. The purpose of the verification being to limit the circulators of any petition to the territory and among the voters where such petition might rightfully be circulated and to the persons rightfully entitled to participate therein. Therefore the requirement with reference to county or city (as the case may be) was not an idle phraseology in said form, but was placed there for a definite purpose. Thus, it might well be that signers of a petition could be duly certified as legal voters of the state or even of a county when they could not be so certified as legal voters of a particular municipality. While clerical and technical errors are to be disregarded (section 5892, O. S. 1931, 34 Okla. St. Ann. sec. 24; In re Initiative Petition No. 23, 35 Okla. 49, 127 P. 862), the omission from the verification of the circulators of the statement

that the signers of the petition were legal voters of Oklahoma City was a material variation from the form provided by the Legislature and constitutes such a substantial defect in the form required as to justify the refusal of the city clerk to certify the sufficiency of the petition so submitted. In re Initiative Petition, City of Okmulgee, supra; In re Referendum Petition No. 1, Town of Haskell, 182 Okla. 419, 77 P.2d 1152; Foster v. Young, supra. A failure to comply with a substantial requirement provided by statute and governing initiative petitions renders such petition invalid and ineffective. Whitson v. City of Kingfisher, 176 Okla. 145, 54 P.2d 616; In re State Question 138, 114 Okla. 285, 244 P. 801; In re Referendum Petition No. 35, 78 Okla. 47, 186 P. 485; In re Referendum Petition No. 31, 68 Okla. 147, 172 P. 639. In view of the conclusion thus reached, it is unnecessary to discuss the remaining contention. Since, for the reason above pointed out, the petition was insufficient in form, the city clerk of Oklahoma City proceeded properly when he refused to certify to its sufficiency and in sustaining the protest thereto.

The protest is sustained.

BAYLESS, C. J., and RILEY, OSBORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and CORN, J., dissent.