**Watie HEMBREE, Petitioner,**

v.

**The CITY OF STILWELL, a Municipal Corporation, and its officers consisting of Harold Moten, Mayor, and Clinton Fixin, James Collins, Norman Isaacs, Larry Don O'Neal and Nancy Garrett, Council Members, and County Election Board of Adair County, Oklahoma consisting of Patricia Carrington, Chairman, Doyle Guthrie, Vice-Chairman and David Benham, Secretary, and William H. Bliss, District Judge of the 15th Judicial District, State of Oklahoma, Respondents.**

No. 53631.

Supreme Court of Oklahoma.

July 17, 1979.

---

David Harris, Stilwell, for petitioner.

Lloyd E. Cole, Jr., Stilwell, for respondents.

OPALA, Justice:

This is an aftermath of a district court election contest under 26 O.S.Supp.1978 § 8–120. At issue before us is the correctness of announced election results in the

April 3, 1979 race for Ward 3 councilman in Stilwell between incumbent Nancy Garrett and challenger Watie Hembree. Hembree [petitioner], for whom 45 votes were officially counted, lost to Garrett whose announced vote was 48. The judge who heard the contest ruled that Garrett was entitled to a certificate of election and this original proceeding followed.

Hembree's challenge here rests on two principal complaints:

1. A "cluster" of irregularities which occurred *before* the election. These stemmed from the city officialdom's failure to comply with certain statutes that require (a) a city council's resolution calling an election [26 O.S.Supp.1978 § 13-102] (b) providing a current city map for the use of the county election board [26 O.S.Supp.1978 § 13-107] and (c) furnishing a copy of the city charter to the election board [26 O.S.Supp.1978 § 13-109];

2. The number of illegal votes cast and counted [in the announced results] make it impossible to identify the winning candidate with the statutorily-mandated gauge of "mathematical certainty" [26 O.S.Supp.1978 §§ 8-120(2) and 8-122].

■ Petitioner's complaint, so far as it concerns the city officials' want of compliance with the outlined pre-election formalities, does not entitle him to any relief. When failure to meet statutory formalities is invoked *after* the balloting takes place, the results of an election will not be invalidated absent proof of fraud or corruption so pervasive as to taint the entire process. Neither the record before us nor the briefs give any intimation of vitiating defects. We therefore hold that want of compliance by the city officials with the enumerated pre-election formalities can form no basis for invalidating the contest here under consideration. *Gardner v. Scott,* 205 Okl. 333, 237 P.2d 863, 866 [1951]; *State v. Long,* 178 Okl. 409, 63 P.2d 60, 61-63 [1936].

■ Passing to petitioner's other complaint i.e., that the winner may not be determined with mathematical certainty, as required by our statutory law, we observe that the burden was cast on him to establish the presence of illegal votes in sufficient number to eliminate his opponent's margin of *three.* He clearly sustained this burden when he produced five persons who admittedly were not legal voters in the ward for the seat in which the election was being held.

■ The announced winner [Garrett] maintains that petitioner's evidence was insufficient because four of his witnesses had been challenged at the polls by a person appointed by her for that purpose under the terms of 26 O.S.Supp.1978 § 7-131. It is her position that votes previously challenged in her behalf cannot be "charged" against her winning margin because that procedure would be rested on patently illogical inference—one of imputing a vote in favor of the challenging candidate. No testimony was tendered by either side as to the identity of the candidate for whom any of the five illegal voters in fact cast their votes.

If accepted, the argument advanced here by Garrett would create a presumption that *no* illegal vote challenged by a candidate at the polls could be considered as having been cast for that candidate. This presumption is without sanction either in our case law or in the election code. Its adoption would clearly impose on a contestant a far greater burden than that cast by the provisions of 26 O.S.Supp.1978 §§ 8-120(2) and 8-122. Instead of having to show only the existence of mathematical *uncertainty,* a contestant would have to go further and prove with *certainty* that each illegal vote in question was in fact cast for the winning candidate. We find no warrant for so enlarging a contestant's statutory *onus. Baggett v. State Election Board,* Okl., 501 P.2d 817, 822-824 [1972].

■ We need not reach here the question whether testimony by illegal voters identifying the candidate for whom they cast their vote, if proffered, would have been admissible. What we do hold is that absent competent evidence to the contrary, when the number of illegal votes shown to have been cast in a contest exceed the margin held by the leading candidate, the winner may not be determined with mathematical

certainty within the meaning of 26 O.S. Supp.1978 §§ 8–120(2) and 8–122. *Edmondson v. State,* Okl., 533 P.2d 604 [1975]; *Baggett v. State Election Board,* supra, at 824; *Williamson v. State Election Board,* Okl., 431 P.2d 352 [1967]. We reaffirm today our commitment to the cited cases. The mathematical certainty rule announced in them simply will not allow us the use of "a logical inference" as a sole basis for attributing illegal votes to a candidate in the contest. It therefore cannot be determined with mathematical certainty which candidate received the majority of legal votes cast and neither candidate was entitled to a certificate of election.

Based on the reasons stated, we assume original jurisdiction and issue the writ sought commanding that the respondent-judge direct the county election board either to refuse a certificate of election to Nancy Garrett or declare it void, if one had been previously issued.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.