EZZELL v. LACK



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:EZZELL v. LACK

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 EZZELL v. LACK
2021 OK 5
Case Number: 119220
Decided: 01/26/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 5, __ P.3d __

 

IN RE: PETITION TO RECALL WARD THREE CITY COMMISSIONER BEN EZZELL SUBMITTED TO THE CITY OF ENID ON AUGUST 4, 2020,

BEN EZZELL, Plaintiff/Appellant,
v.
ALISSA LACK, CITY CLERK, CITY OF ENID, OKLAHOMA, and GEORGE PANKONIN, MAYOR, CITY OF ENID, OKLAHOMA; Defendants/Appellees,
AND
KEITH SIRAGUSA, HEATHER WHITE, TY ATKINSON, BRIAN HENRY, & JENNIFER HENRY, Intervenors.

APPEAL FROM THE DISTRICT COURT OF GARFIELD COUNTY

Honorable Allison Lafferty, Trial Judge

¶0 Voters in the City of Enid presented a recall petition to City of Enid officials. The petition sought to recall the plaintiff/appellant, City Commissioner, Ben Ezzell, for his support of a city wide mask mandate to combat the COVID epidemic. Ezzell filed an objection to the recall petition in the District Court of Garfield County. The City of Enid City Charter, Part D, Art. II, §6 applies state general election laws to city elections, unless the state laws conflict with the charter provisions. Ezzell alleged that because the recall petition did not comply with the requirements of 34 O.S. 2011 §3 and 34 O.S. Supp. 2015 §6 which relate to signature collection, the recall petition was insufficient. After a hearing, the trial court denied Ezzell's protest and determined that the petition was sufficient under the City Charter of Enid recall process. Ezzell appealed, and we retained the cause to determine whether these state statutes are applicable to this cause, and if so, whether the failure to follow them rendered the recall petition insufficient. We hold that: 1) because there is no conflict between the City Charter recall process, and the additional state requirements, 34 O.S. 2011 §3 and 34 O.S. Supp. 2015 §6, the state statutes governed, but were not properly followed; and 2) the recall petition is insufficient on its face pursuant to Clapsaddle v. Blevins, 1998 OK 5, 66 P.3d 352, and its predecessors.

CAUSE PREVIOUSLY RETAINED;
TRIAL COURT REVERSED.

David M. Collins, Enid Oklahoma, for Appellant.

Tony G. Puckett, Oklahoma City, Oklahoma, for Appellees.

Stephen Jones, Gabriel Dunbar, William Jewell, Enid, Oklahoma, for Intervenors.

KAUGER, J.:

¶1 This cause concerns the review of the trial court's denial of a protest which challenges the sufficiency of a petition to recall an elected City of Enid City Commissioner, and the applicability of state statutes to the City's election recall process. In Clapsaddle v. Blevins, 1998 OK 5, ¶14, 66 P.3d 352, we held that city recall measures are governed by state statutory provisions for initiative and referendum. However, only the publication notice provisions of 11 O.S. 2011 §15-104[1] were at issue in Clapsaddle, supra. The City of Enid City Charter, Part D, Art. II, §6 directs the application of state general election laws to city elections, unless the state laws conflict with the charter provisions.[2] Today, we are asked to determine the extent to which other state statutory provisions are applicable to this cause.

¶2 We hold that because there is no conflict between the City Charter recall process, and the additional state requirements of 34 O.S. 2011 §3 and 34 O.S. Supp. 2015 §6, the state statutes governed, but were not properly followed. The recall petition is insufficient on its face pursuant to Clapsaddle v. Blevins, 1995 OK 5, 66 P.3d 352, and its predecessors.

FACTS/PROCEDURAL HISTORY

¶3 On February 12, 2013, voters of the City of Enid, Oklahoma (COE), elected the plaintiff/appellant, Ben Ezzell (Ezzell/Commissioner), to represent Ward Three of COE. Ezzell ran unopposed for the same seat four years later and won. He is term-limited, and his term expires on May 3, 2021. Two hundred and four alleged Ward Three, COE voters signed a recall petition which organizers filed with the COE Clerk's office on August 4, 2020, in an attempt to recall Ezzell from his elected position.[3] The voters were upset that Ezzell supported a mask mandate for the COE, and that he wanted to follow the Center for Disease Control Guidelines.

¶4 The signature collectors signed a signature page stating that "the signatures were known to me, at their home at the time of signing, verified through the okvoterportal.okelections.us, or stated that they were a registered voter in Enid Ward 3." A notary then notarized the collector's signature. On August 4, 2020, the City Clerk sent a letter to the signature collectors notifying them that the petition was insufficient. The problem was that the City Clerk had read in the newspaper that some of the signatures were not, in fact, collected at the voters' homes, thus rendering the notarized affirmations of the signature collectors inaccurate. The circulators confirmed that what the Clerk read in the newspaper was true.

¶5 The City Clerk suggested two alternative options to correct the problem: 1) have the signatories check photo identification cards, and resubmit the petition with a statement that the photo identification cards were checked; or 2) the clerk could determine whether there were sufficient Ward Three voters' signatures included, and those signatures can be verified by checking photo identification of those who signed.

¶6 The City Attorney also informed the circulators that the petition needed to be amended, and that the circulators needed to identify which voters they knew personally, versus which voters signed in their home. In a supplemental signature page notarized on August 5, 2020, the signature collectors identified whether the voter was known to them personally, or whether they collected the voter's signature at the voter's home. The supplemental information was added to the original petition. There was no indication that any photo identifications had been checked. After conferring with the City Attorney, the City Clerk on August 7, 2020, deemed the recall petition sufficient to proceed to election. The City Clerk noted that, although the best method for ascertaining identity is to check an identification card with a photo which also includes a signature of the person, the COE Charter did not expressly require a check.

¶7 The Clerk also noted that signature collectors' affirmation statements were unclear because they did not contain written affirmations which indicate that the statements in the petition were actually true. Nevertheless, they were notarized, and thus assumed to be truthful, and implicitly clear that the circulators believed the statements contained in the petition provided reasons for the recall. The Enid News & Eagle published notice of the recall petition on August 11, 2020.

¶8 On August 17, 2020, the Commissioner filed an Objection and Protest to recall petition in the District Court of Garfield County. According to Ezzell, the problems with these particular recall signature collections were that they did not include a voter warning as required by state statute 34 O.S. 2011 §3.[4] Furthermore, the circulators did not check photo identifications when collecting signatures, verifying the name, mailing address, and date of birth associated with his or her Oklahoma voter registration record required by 34 O.S. Supp. 2015 §6.[5]

 

¶9 On August 17, 2020, the trial court, pursuant to 11 O.S. 2011 §15-104,[6] set Ezzell's challenges for a hearing on September 8, 2020, which was later continued to October 6, 2020. On September 4, 2020, the COE Mayor and City Clerk filed an answer to Ezzell's Objection to the recall petition. They admit that the deadlines for filing recall petitions are governed by state statutes, but argue that neither our prior decisions, nor any other state statutes are applicable to this cause, and that the recall petition was sufficient. They insist that the recall petition is sufficient because it contained the requisite number of signature of registered voters from Ward Three, and that the City Clerk properly performed her role in the process without acting arbitrarily, fraudulently, or capriciously.

 

¶10 On September 11, 2020, a group of citizens known as the Enid Freedom Fighters petitioned the trial court to intervene in this cause in support of the sufficiency of the recall petition. On November 19, 2020, the trial court allowed intervention. It also determined that the recall petition was sufficient and permitted the election which is set for February 9, 2021, to proceed.

¶11 The trial court's ruling was due, in part, to its restrictive application of our decision in Clapsaddle, supra, which held that city recall measures are governed by state statutory provisions for initiative and referendum. The trial court also stated that "without more specific direction from the Oklahoma Supreme Court," it would not apply Clappsaddle, supra, beyond the confines of the applicability of 11 O.S. 2011 §15-104,[7] to the City's recall election process, even though "Ezzell makes a compelling argument to do so."

¶12 On November 25, 2020, the Commissioner appealed. We retained the cause on December 1, 2020. After the briefing cycle was complete, the cause was assigned on January 11, 2021, to this chamber.

I.

BECAUSE THERE IS NO CONFLICT BETWEEN THE CITY CHARTER 
RECALL PROCESS, AND THE ADDITIONAL STATE REQUIREMENTS
OF 34 O.S. 2011 §§3 AND 6, THE STATE STATUTES GOVERNED, BUT 
WERE NOT PROPERLY FOLLOWED. THE RECALL PETITION IS 
INSUFFICIENT ON ITS FACE PURSUANT TO CLAPSADDLE v. 
BLEVINS, 1998 OK 8, 66 P.3d 352, AND ITS PREDECESSORS.

¶13 The COE argues that: 1) the City Clerk properly determined the recall petition sufficient pursuant to the requirements of the City Charter; and 2) the only state statutory proceeding applicable to this cause, which was also properly followed, is 11 O.S. 2011 §15-104.[8] Ezzell argues that pursuant to Clapsaddle v. Blevins, supra, 34 O.S. 2011 §3 and 34 O.S. Supp. 2015 §6[9] also supplant the City Charter recall provisions; and because these statutes were not also followed, the petition is insufficient, thus abrogating the scheduled recall election.

A. 

The COE City Charter and State Statutory Election Procedures.

¶14 The COE adopted a charter, and it is operating under a charter form of government.[10] Although this was not raised by the parties,[11] the COE City Charter expressly recognizes the applicability of all of the general provisions of the state election statutes to all COE election proceedings. It provides in Part D, Article II, Sections 6 and 7 that:

Section D.2.6. Applicable Laws.

All provisions of the general election laws of the state of Oklahoma, where applicable, and except where the same would be in conflict with the provisions herein made, shall apply to all municipal elections held in the city of Enid. [Ord., 1-4-1947]

Section D.2.7. Alternative Laws.

In the event that the foregoing provisions or any of them should be for any reason held void or for any reason shall become inoperative, then the election laws of the state of Oklahoma shall govern all elections for municipal officers within the city of Enid insofar as said special provisions fail. [Ord., 1-4-1947]

The COE City Charter also expressly addresses a recall election process for a city official in Part A, Article VII, Section 7.[12] The most relevant provisions to thiscause are: the procedure for recall; the signature verification process; and the City Clerk's approval of the petition's sufficiency.

¶15 The Charter's procedure for the recall is as follows:

1) the petition must be signed by qualified electors entitled to vote for a successor to the incumbent sought to be removed;

2) the number of signature must equal at least thirty (30) per centum of the vote of those that voted for the particular ward commissioner; and

3) the petition shall be filed with the City Clerk, and it shall contain a general statement of the grounds and charges for which the removal is sought.[13]

With regard to signatures, all that is required by the charter is that each signer shall provide their place of residence, including the street and number, and on each page of signatures, one signer shall make an oath before an officer competent to administer oaths that the statements therein made are true, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be. Finally, the City Clerk has ten days to determine the petition sufficient and to submit it to the Mayor and Commission.

¶16 Various state statutory provisions concerning elections are found in Title 11 Cities and Towns, and Title 26 Elections, including those addressing initiative and referendum powers and procedures in Title 34 Initiative and Referendum. Title 11 O.S. 2011 §§15-101-110 generally covers municipal initiative and referendums while §§16-101-114 govern municipal elections. These provisions of Title 11 are generally reserved for those cities and towns which have not set out the election process through ordinance or city charter.[14] Title 26 generally covers State, County, and Municipal elections as well. The Municipal provisions are found in §§13-101-111.[15]

 

¶17 Title 34 O.S. 2011 §§1-27 governs the initiative and referendum election process for the State. We need not discuss every provision of these titles because they neither appear to be applicable to this cause, nor were they raised by the parties as controlling. However, those which have been determined or argued to be applicable to recall elections such as the one involved in this cause, we discuss as part of our examination of the controlling case law.

 

B. 

Clapsaddle v. Blevins And Its Predecessors.

¶18 Recall elections constitute constitutionally sanctioned methods for the people to intervene in the affairs of government. They are intended to give the electorate the opportunity to participate directly in the lawmaking process, and to serve as a check upon the conduct of officeholders.[16]

¶19 Dunham v. Ardery, 1914 OK 418, 143 P. 331, tested this principle shortly after statehood and addressed whether cities had the authority to hold recall elections. In Dunham, the City of Guthrie operated under a charter form of government.[17] The Guthrie charter provided for the removal of any elected official by recall at any time. It also provided a simple procedure for recall which: included the necessity of signatures from more than 35% of the votes cast at the preceding election; required the signer to include their place of residence, including the street and number; and outlined the City Clerk certification duties as to the petition's sufficiency before the recall was submitted to the voters.

¶20 The contention in Dunham, supra, was[18] that a city charter which provides a method of recall for city officers, conflicted with the state Constitution which required the state Legislature to set forth the process. The Court held that if it were not intended under our Constitution to give cities adopting the charter form of government the power and right to put into practice the power to recall their officers, then there would have been an inhibition and there was no such inhibition. Rather, the underlying principle of the recall doctrine is to permit the people to expeditiously recall an official, without form or ceremony, except as provided for in the charter. Accordingly, there was no conflict with the state Constitution.

¶21 Another contention Dunham, supra, addressed was the standard which the Court would apply to review the determination of a City Clerk who has determined a recall petition to be sufficient under the terms of the charter. The Court determined that the clerk was vested with a discretionary and a quasi judicial power to determine whether a petition was sufficient. Consequently, the Court held that in the absence of fraud or arbitrary action, a clerk's decision is conclusive on the Courts.[19]

 

¶22 Subsequent decisions applied a different rule to municipalities which were either not organized under a charter form of municipal government, or the charter which they were organized under did not provide for an initiative, referendum, or recall process. Those cities were required to follow the procedures prescribed by the laws for the state at large. For example, in In re Initiative Petition No. 2 Cushing Oklahoma v. Harlow, 1932 OK 124, 10 P.2d 271, the Court addressed the process municipal voters must follow when their city did not, by ordinance or charter, provide for the manner of exercising the initiative and referendum process.

 

¶23 In Harlow, supra, City of Cushing voters circulated an initiative petition to approve or disapprove a franchise to a power company. The City of Cushing operated under a charter which apparently did not provide for a specific initiative and referendum process. The Court in ¶19 said:

. . . it appears to us that it was clearly the intention of the framers of the Constitution, and the people in adopting the same, and of the Legislature in enacting laws to vitalize the provisions of the Constitution, and to prevent corruption in making, procuring, and submitting initiative and referendum petitions, that the procedure to determine the sufficiency of the petition and the form of ballot title should be speedily determined in order that the will of the people, if the petitions were found to be sufficient and free from corruption, should be carried into force and the qualified electors permitted to vote upon the proposition in accordance with the initiative petitions and the proposed law, constitutional amendment, or other measure proposed to be submitted to the qualified electors for their vote upon the same. . . .

We determined that state Constitutional and statutory initiative and referendum provisions prescribe the method of procedure for submitting and voting for all cities which do not provide by ordinance or charter the manner of exercising the and referendum powers reserved to the people of this State. The duties required by the Governor and Secretary of State as to state legislation were substituted by the City's chief executive officer and chief clerk of such city.

¶24 In Community Gas and Service Co. v. Walbaum, 1965 OK 118, 404 P.2d 1014, the Town of Hinton, Oklahoma, was not organized under a charter form of municipal government. Consequently, when an initiative petition which proposed granting a natural gas distribution company a franchise was challenged as insufficient to submit to the voter, the Court held that the procedure prescribed by the law for the state at large governs the initiation of municipal legislation.

¶25 At issue in Walbaum, supra, was the application of the same statute the Commissioner in this cause relies. Title 34 O.S. O.S. 1961 §3. Section 3 required an outer page with a warning clause informing the signatory of the penal sanctions imposed by law for placing duplicate, false, or fraudulent signatures or for signing the petition by one who was not a legal voter. The question before the Court was whether the omission of such a warning clause was fatal to the validity of the initiative petition. The Court said:

¶7 The evident purpose of the warning clause required by our statute is to keep the petition free from the taint of duplicate, false, fraudulent and unauthorized signatures. The warning clause is just as essential to guard against and prevent fraud, deception or corruption of the initiative and referendum process as are such other indispensable requirements of the statute as (1) the pre-circulation filing of a copy of the petition required by 34 O.S. 1961 §8; In re Referendum Petition No. 1, City of Guymon, supra; Whitson v. City of Kingfisher, 176 Okl. 145, 54 P.2d 616; (2) timely post-circulation filing of the petition in compliance with 34 O.S. 1961 § 8 ; State ex rel. Hunzicker v. Pulliam, 168 Okl. 632, 37 P.2d 417, 96 A.L.R. 1294; Foster v. Young, 149 Okl. 19, 299 P. 162; and (3) the execution of a circulator's verification prescribed by 34 O.S. 1961 § 6 . In re Initiative Petition No. 23, etc., 35 Okl. 49, 127 P. 862, 864; In re State Question No. 138, etc., 114 Okl. 285, 244 P. 801; In re Referendum Petition No. 35, etc., 78 Okl. 47, 186 P. 485. . . .

¶8 While clerical and technical defects in an initiative petition may and should be disregarded, 34 O.S. 1961 § 24, a material departure from the statutory form renders an initiative petition ineffective and void. In re Initiative Petition No. 9 of Oklahoma City, 185 Okl. 165, 90 P.2d 665, 668. If a statutory provision is essential to guard against fraud, corruption or deception in the initiative and referendum process, such provision must be viewed as an indispensable requirement and failure to substantially comply therewith is fatal.

Walbaum, supra, also noted that application of the voter verification process of §6 was just as indispensable as §3's warning clause. Accordingly, the Court held that the initiative petition was invalid on its face and that the municipal clerk may declare it insufficient for submission for a vote.

¶26 The teachings of Dunham, supra, Harlow, supra, and Walbaum, supra, and their progeny, culminated in our decision in Clapsaddle v. Blevins, 1998 OK 5, 66 P.3d 352. Clapsaddle, supra, involved a challenge to recall certain Del City officials. Del City operates under a city charter and the city charter provided a procedure for recall elections. Pursuant to the charter, the recall petitions were filed with the city clerk who certified their sufficiency. The City Council scheduled the recall election and the clerk published notice in the local newspaper.

¶27 Those affected by the recall measure petitioned the district court, alleging that: the recall petitions did not bear sufficient signatures; they were defective on their face; and the election date was invalid because it was set beyond the time limit prescribed by the city charter. Ultimately, the trial court ordered that the election be canceled because it was impossible for the clerk to ascertain the sufficiency of signatures due to the unascertainable total number of qualified electors.

¶28 The conflict in Clapsaddle, supra, was that the provisions of 11 O.S. 1991 §15-104, which regulated the state procedure to be followed when an initiative or referendum petition is filed with a municipal clerk, prescribed different time limits than the city charter. For the first time, we held that the terms of 11 O.S. 2011 §15-104 provide the exclusive procedure for contesting the sufficiency of a recall petition.[20] We said that:

¶13 Initiative, referendum and recall elections all constitute constitutionally sanctioned methods for popular intervention in the affairs of government, which are intended to give the electorate an opportunity to participate directly in the law-making process and a check upon the conduct of officeholders. State v. Pulliam, 165 Okl. 70, 25 P.2d 64 (1933), In re Initiative Petition No.2 of Cushing, 157 Okl. 54, 10 P.2d 271, 275 ( 1932). All three measures -- initiative, referendum and recall -- must hence be treated as falling under the same procedural rubric.

¶14 The terms of § 15-104 provide the exclusive procedure for contesting the sufficiency of a recall petition. Before the enactment of 11 O.S. § 15-104 in 1978, there was no state procedure for challenging in the district court the clerk's determination of the sufficiency (or insufficiency) of a recall petition. City Council of the City of McAlester v. Milwee, 31 Okl. 60, 122 P. 173 (1912), Dunham v. Ardery, 43 Okl. 619, 143 P.2d 331 (1914). Neither does the Del City charter provide a contest procedure.

¶29 We also said that: 1) the burden rested on the challengers to show that the recall petitions are unsupported by a sufficient number of signature;[21] 2) signatures on the recall petitions are presumed to be those of qualified voters;[22] and 3) the challenger must also show that the actions of the city clerk are arbitrary, fraudulent and capricious.[23] Because the challengers had not shown that the clerk acted arbitrarily or fraudulently, we held that the trial court erred in canceling the election.

¶30 Another concern addressed in Clapsaddle, supra, which is controlling here, is the extent to which a state statute controls over a city charter. The Del City Charter provided that a recall election must be scheduled between 30 and 40 days from the passage of the resolution calling for the election. However, 26 O.S. Supp. 1993 §13-102,[24] the statute in effect at the time, called on a municipality to submit a resolution to the county election board not fewer than 60 days before a special election is to be held. The scheduling of the election complied with the statutory mandates, but was not in accord with the city's charter.

¶31 The Court held that the state statute controlled. In paragraph 28, we said:

A city charter will control over a contrary state statute only when the matter at hand is one of purely local concern. The setting of a special municipal election, which must be conducted by the county election board under the oversight of the State Election Board, is not a matter of local concern. It is clear that, as the Secretary of the Oklahoma County Election Board testified at length, the election board requires a minimum of 60 days to prepare adequately for an election. State law will on this point supplant nonconforming city law. Simpson v. Dixon, 1993 OK 71, 853 P.2d 176, 183-187.

¶29 Aside from the practical reasons why the holding of a municipal election is a matter of state, rather than local, concern, the State also has a vital interest in providing the people with a corruption-free regime for elections to be held upon initiative, referendum and recall measures. Oklahoma's legislature is required to pass laws that would prevent both fraud and corruption from clouding the process by which popular will is to be expressed. Art. 5 § 8, Okl. Const. The provisions of 26 O.S. § 13-102 are clear-[66 P.3d 359]-ly designed to ensure orderly and corruption-free conduct of vital municipal elections.

¶32 Both 34 O.S. 2011 §3[25] and 34 O.S. Supp. 2015 §6[26] are expressly aimed at ensuring that the persons:

1) who provide their signature, name, and address as a qualified voter living within the qualified voting area, are who they say they are;
2) have been verified as such by the signature collectors of the recall ballot; and
3) have been properly warned of the consequences of providing false information.

Nothing in these statutes expressly conflict with the COE City Charter recall provision. Rather, the statutes merely impose additional measures, further ensuring the sanctity of the election process, as well as the veracity and validity of the voters.

¶33 Dunham, supra, held that city could via city charter provide for a recall process. Harlow, supra, held that when a city charter does not provide such a process, the state initiative and referendum process governs. Walbaum, supra, held that when the purpose of a statutorily required warning was to keep the petition free from the taint of duplicate, false, fraudulent and unauthorized signatures, the omission of such a warning clause was fatal to the validity of the initiative petition. Clapsaddle, supra, held that even when a city charter has a recall election process, but no procedure to challenge the recall petition, state statutes apply. It also held that the State has a vital interest in providing the people with a corruption-free regime for elections to be held on recall matters and certain state statutes control because the election was beyond a purely local concern.

¶34 The Oklahoma Constitution provides that any city with a population of more than 2,000 may establish a city charter for its governance.[27] There are eighty-six cities with a charter form of government and 508 non-charter governments.[28] There has been a longstanding effort to reconcile the functions and processes of charter and non-charter governments with the general law of the state of Oklahoma in order to provide a commonality of experience and government access for all citizens of Oklahoma. None of our previous cases are individually dispositive of this cause. Nevertheless, the holdings of Dunham, supra, Harlow, supra, Walbaum, supra, and Clapsaddle, supra, cumulatively require 34 O.S. 2011 §3 and 34 O.S. Supp. 2015 §66 to be applied to this cause and should have been followed.

¶35 Pursuant to Walburn, supra, the recall petition was invalid on its face because a statutory provision which is essential to guard against fraud, corruption and deception in the election process must be viewed as an indispensable requirement and failure to substantially comply therewith is fatal. The COE City Charter expressly makes general election statutes, which are aimed at corruption-free elections, applicable.[29] In this cause, there was no conflict with the state statutes, they merely add additional safeguard measures to ensure a fair and corruption-free election. The trial court erred in allowing the recall election to proceed and must be reversed.

CONCLUSION

¶36 The same general procedure which applies to initiative petition, and referendum, also controls municipal recall elections.[30] As a matter of public policy, once an election occurs, the Court usually indulges every presumption in favor of its validity.[31] Where possible, the validity of an election will be sustained, and an election which is not clearly illegal will be upheld.[32] Generally, in the absence of fraud or corruption, and in the presence of merely statutory informalities, the results of the election will not be invalidated.[33] This rationale is premised on the interest the electorate has in having its votes count, and the expense involved in conducting a second election.[34]

¶37 It is well-settled that, where possible, the validity of an election quest will be judicially upheld.[35] The burden to challenge the sufficiency of a recall after an election has occurred is quite high. However, because we do engage in such presumptions, the Court is compelled to correct any fatal flaws before an election occurs. We must do so to ensure orderly and corruption-free conduct which is vital to municipal elections and vital to giving the electorate the opportunity to participate in the law-making process. The trial court is hereby reversed.

¶38 Any petition for rehearing shall be filed no later than 5:00 p.m. on Friday, January 29, 2021.

CAUSE PREVIOUSLY RETAINED;
TRIAL COURT REVERSED.

DARBY, C.J., KAUGER, EDMONDSON, COMBS, GURICH, JJ., concur;

KANE, V.C.J, concurs in result, (by separate writing);

WINCHESTER., (by separate writing) and ROWE, J.J., dissent;

COLBERT, J., not present.

FOOTNOTES

[1] Title 11 O.S. 2011 §15-104 provides:

A. When signed copies of a petition are timely filed with the clerk, the clerk shall make a physical count of the number of signatures appearing on the petitions. He shall then publish, in at least one (1) newspaper of general circulation in the municipality, a notice of the filing and the apparent sufficiency or insufficiency of the petition. The notice shall also state that any qualified elector of the municipality may file a protest to the petition or an objection to the count made by the clerk.

B. A protest to the petition or the count of signatures shall be filed in the district court in the county in which the situs of the municipality is located within ten (10) days after the publication. Written notice of the protest shall be served upon the clerk and the parties who filed the petition. In the case of the filing of an objection to the count, notice shall also be served upon any party filing a protest. The district court shall fix a day, not less than ten (10) days after the filing of a protest, to hear testimony and arguments for and against the sufficiency of the petition. A protest filed by anyone, if abandoned by the party filing it, may be revived within five (5) days by any other qualified elector. After the hearing, the district court shall decide whether such petition is in form required by law.

[2] Enid City Charter, Part D, Art. II, Section 6 provides:

All provisions of the general election laws of the state of Oklahoma, where applicable, and except where the same would be in conflict with the provisions herein made, shall apply to all municipal elections held in the city of Enid. [Ord., 1-4-1947]

[3] The stated purpose of the recall was as follows:

-- Conduct unbecoming to an elected official.
-- Dividing our community by threatening use of force and advocating fines against law abiding, healthy citizens.
-- Disrespecting our police department and failing to heed the advice of our police chief.
-- Showing disregard for the law by asking the Enid City Council to pass mandates with preconceived plans to change them once in place.
-- Subverting the will of the people in favor of his own arbitrary opinion.
-- Dismissive of his constituents' views.
-- Generally abusing public trust.

There is also evidence in the record that in addition to their concern with Ezzell's position on a mask mandate, the voters were also concerned that Ezzell had a personal agenda to have the City Commission directly oversee the police department. It appears this oversight is also tied to a mask mandate, and the potential enforcement thereof.

[4] Title 34 O.S. 2011 §3 provides:

Each initiative petition and each referendum petition shall be duplicated for the securing of signatures, and each sheet for signatures shall be attached to a copy of the petition. Each copy of the petition and sheets for signatures is hereinafter termed a pamphlet. On the outer page of each pamphlet shall be printed the word "Warning", and underneath this in ten-point type the words, "It is a felony for anyone to sign an initiative or referendum petition with any name other than his own, or knowingly to sign his name more than once for the measure, or to sign such petition when he is not a legal voter". A simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet. Not more than twenty (20) signatures on one sheet on lines provided for the signatures shall be counted. Any signature sheet not in substantial compliance with this act shall be disqualified by the Secretary of State.

The statute was amended November 1, 2020, with non-substantive changes. It provides:

Each initiative petition and each referendum petition shall be duplicated for the securing of signatures. The Secretary of State shall design a form, subject to change, for signatures that shall be used by proponents of initiatives or referendums when collecting signatures, and each sheet for signatures shall be attached to a copy of the petition. Each copy of the petition and sheets for signatures is hereinafter termed a pamphlet. On the outer page of each pamphlet shall be printed the word "Warning", and underneath this in ten-point type the words, "It is a felony for anyone to sign an initiative or referendum petition with any name other than his own, or knowingly to sign his name more than once for the measure, or to sign such petition when he is not a legal voter." A simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet.

[5] Title 34 O.S. Supp. 2015 §6 provides in pertinent part:

Each sheet of every such petition containing signatures shall be verified on the back thereof, in substantially the following form, by the person who circulated said sheet of said petition, by his or her affidavit thereon and as a part thereof. . . .

I, ______, being first duly sworn, say: That I am at least eighteen (18) years old and that all signatures on the signature sheet were signed in my presence; I believe that each has stated his or her name, mailing address, and residence correctly, and that each signer is a legal voter of the State of Oklahoma and county of ______ or of the city of ______ (as the case may be). (Signature and mailing address of affiant.)

The statute was amended November 1, 2020, with non-substantive changes. It provides in pertinent part:

Any person who circulates a sheet of said petition shall verify the signatures included on any signature sheets he or she circulates by executing his or her affidavit thereon and as a part thereof. The Secretary of State shall cause to be affixed onto the back of the signature form an affidavit, subject to change, for the circulator to verify the signatures. . . .

I, ______, being first duly sworn, say: That I am at least eighteen (18) years old and that all signatures on the signature sheet were signed in my presence; I believe that each has stated his or her name, mailing address, and date of birth associated with his or her Oklahoma voter registration record, and that each signer is a legal voter of the State of Oklahoma and county of ______ or of the city of ______ (as the case may be). (Signature and complete address of affiant.)

Subscribed and sworn to before me this ________ day of ________ A.D. 20__.

(Signature and title of the Oklahoma notarial officer before whom oath is made, and his or her complete address, commission number and expiration date, and official Oklahoma notary public seal.)

[6] Title 11 O.S. 2011 §15-104, see note 1, supra.

[7] Title 11 O.S. 2011 §15-104, see note 1, supra.

[8] Title 11 O.S. 2011 §15-104, see note 1, supra.

[9] Title 34 O.S. 2011 §3, see note 4, supra, 34 O.S. Supp. 2015 §6, see note 5, supra.

[10] The Charter of the City of Enid was adopted by the city at an election held on September 27, 1909, and approved by the Governor of the State of Oklahoma on October 2, 1909; it became effective on December 20, 1909. The voters have amended the Charter by Ordinances various times. In 1947, amendments relating to elections were also adopted as Part D.

[11] Title 12 O.S. 2011 §2201 provides:

A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States.

B. Judicial notice may be taken by the court of:

1. Private acts and resolutions of the Congress of the United States and of the Legislature of this state, and duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state or the United States; and
2. The laws of foreign countries.

C. The determination by judicial notice of the applicability and the tenor of any matter of common law, constitutional law or of any statute, private act, resolution, ordinance or regulation shall be a matter for the judge and not for the jury.

[12] Part A. Article VII, Section A.7.7 provides:

The holder of any elective office may be removed at any time by the electors qualified to vote for a successor of such incumbent. The procedure to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least thirty (30) per centum of the vote of those that voted in the particular ward for commissioners if the recall is for a commissioner or thirty (30) per centum of all those who voted for the office of the Mayor if the recall is for the Mayor at the last preceding general municipal election, demanding an election of a successor of the person sought to be removed shall be filed with the City Clerk, which petition shall contain a general statement of the grounds and charges for which the removal is sought. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. One of the signers of each such paper shall make oath before an officer competent to administer oaths that the statements therein made are true as he believes, and that each signature to the paper appended is the genuine signature of the person whose name it purports to be. Within ten (10) days from the date of filing such petition the City Clerk shall examine and from the voters' register ascertain whether or not said petition is signed by the requisite number of qualified electors, and, if necessary, the Council shall allow him extra help for that purpose; and he shall attach to said petition his certificate, showing the result of said examination. If by the Clerk's certificate the petition is shown to be insufficient, it may be amended within ten (10) days from the date of said certificate. The Clerk shall, within ten (10) days after such amendment, make like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same without prejudice, however, to the filing of a new petition to the same effect. If the petition shall be deemed to be sufficient, the Clerk shall submit the same to the Mayor and Commissioners without delay. If the petition shall be found to be sufficient, the Council shall order and fix a date for holding the said election, not less than thirty (30) days nor more than forty (40) days from the date of the Clerk's certificate to the Mayor and Commissioners that a sufficient petition is filed.

The Mayor and Commissioners shall make, or cause to be made, publication of notice and all arrangements for holding such election, and the same shall be conducted, returned and the result thereof declared, in all respects as are other city elections. The successor of an officer so removed shall hold office during the unexpired term of his predecessor. Any person sought to be removed may be a candidate to succeed himself, and unless he requests otherwise in writing, the Clerk shall place his name on the official ballot without nomination. In any such removal election, the candidate receiving the highest number of votes shall be declared elected. At such election if some other person than the incumbent receives the highest number of votes the incumbent shall thereupon be deemed removed from the office upon qualification of his successor. In case the party who receives the highest number of votes shall fail to qualify, within ten (10) days after receiving notification of election, the office shall be deemed vacant. If the incumbent receives the highest number of votes, he shall continue in office. The same method of removal shall be cumulative and additional to the methods heretofore provided by law.

No recall petition shall be filed against any officer until he has actually held his office for at least six (6) months.

[13] Part A, Article VII, Section A.7.7, see note 12, supra.

[14] Title 11 O.S. 2011 §15-102 provides:

The procedure in municipalities which do not provide by ordinance or charter for the manner of exercising the initiative and referendum powers shall be governed by the Oklahoma Constitution and general state law, except as otherwise provided in Sections 11-15-101 through 11-15-110 of this title. The duties required of the Governor by state law shall be performed by the mayor; the duties of the Secretary of State shall be performed by the municipal clerk; and the duties of the Attorney General shall be performed by the attorney for the municipality. The procedure for initiative and referendum as to municipal legislation shall be as nearly as practicable the same as those for measures relating to the people of the state at large.

Title 11 O.S. 2011 §16-102 provides in pertinent part:

A. The provisions of Section 16-101 et seq. of this title shall not apply to any municipality which is governed by charter; provided, that elections for such municipalities which shall be conducted by the county election board shall be scheduled only on an election date identified by subsection B of Section 3-101 of Title 26 of the Oklahoma Statutes. However, such a municipality may, by indicating in its resolution calling an election, choose to follow any provision of state law governing elections conducted by a county election board when the municipality's charter or ordinances are silent on the matter addressed by such provision. In such instance, if the municipal election or any substantial portion thereof is not conducted by a county election board, the duties required of the county election board or its secretary shall be performed by the municipal authority designated by the municipal governing body and nothing herein shall be construed to require the county election board to perform any such duties. The residency requirements of Sections 16-109 and 16-110 of this title shall apply to all municipalities except to the extent that such residency requirements are governed by municipal charter. . . .

[15] Title 26 O.S. 2011 §§13-101-111. Section 13-101 provides:

All municipal elections conducted in the State of Oklahoma shall be conducted by the county election board of the county wherein said municipality's central offices are located, unless otherwise provided by law.

[16] Clapsaddle v. Blevins, 1998 OK 5, ¶12, 66 P.d 352; State v. Pulliam, 1933 OK 480, ¶15, 25 P.2d 64. See, In re Initiative Petition No. 2 Cushing, 1932 OK 124, ¶¶2-9, 10 P.2d 271.

[17] The Oklahoma Const. art. 18, §3 provides in pertinent part:

§ 3(a). Framing and adoption of charter - Approval by Governor - Effect - Record - Amendment.

Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, . . . it shall be submitted to the qualified electors of said city at a general or special election, and if a majority of such qualified electors voting thereon shall ratify the same, it shall thereafter be submitted to the Governor for his approval, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this State. Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. . . .

[18] The constitutional provisions at issue were art. 8, §§1, 2 and 6 which provided in pertinent part, at the time, as follows:

§1. The Governor and other elective state officers, including the Justices of the Supreme Court, shall be liable and subject to impeachment for wilful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude committed while in office. . . .

§2. All elective officers, not liable to impeachment, shall be subject to removal from office in such manner and for such causes as may be provided by law.

§6. The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this article.

[19] In State ex rel. Bass v. Pulliam, 1933 OK 480, ¶19, 25 P.2d 64, the Court further held that even where the clerk has neglected to comply with a charter provision to timely determine the sufficiency of a petition, the presumption was that all of the signatures contained therein are valid, and that the petition is sufficient.

[20] Clapsaddle v. Blevins, see note 16, supra at ¶14. Title 11 O.S. 2011 §15-104, see note 1, supra.

[21] Clapsaddle v. Blevins, supra at ¶17.

[22] Clapsaddle v. Blevins, supra at ¶17.

[23] Clapsaddle v. Blevins, supra at ¶23; Dunham v. Ardery, 1914 OK 418, ¶0, 143 P. 331.

[24] Title 26 O.S. Supp. 1993 §13-102 provided:

Not fewer than fifteen (15) days before the filing period for any municipal election, or in the event of a special election, not fewer than sixty (60) days before such election, the governing board of any municipality shall submit a resolution to the secretary of the county election board conducting said election. Said resolution shall contain the following facts:

1. The dates of the election or elections;

2. The offices to be filled or the questions to be voted upon at said election or elections;

3. Qualifications for said offices;

4. Designation of which offices shall be filled by voting by ward and which offices shall be filled by voting at large;

5. Indication of whether the election will be partisan or nonpartisan;

6. For charter cities where the charter is silent, indication of any portion of state law which will apply; and

7. Any other information necessary for conducting said election or elections.

[25] Title 34 O.S. 2011 §3, see note 4, supra.

[26] Title 34 O.S. Supp. 2015 §6, see note 5, supra.

[27] The Okla. Const. art. 18, §3(a) provides:

§ 3(a). Framing and adoption of charter - Approval by Governor - Effect - Record - Amendment.

Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this State, by causing a board of freeholders, composed of two from each ward, who shall be qualified electors of said city, to be elected by the qualified electors of said city, at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board or a majority of them, and returned, one copy of said charter to the chief executive officer of such city, and the other to the Register of Deeds of the county in which said city shall be situated. Such proposed charter shall then be published in one or more newspapers published and of general circulation within said city, for at least twenty-one days, if in a daily paper, or in three consecutive issues, if in a weekly paper, and the first publication shall be made within twenty days after the completion of the charter; and within thirty days, and not earlier than twenty days after such publication, it shall be submitted to the qualified electors of said city at a general or special election, and if a majority of such qualified electors voting thereon shall ratify the same, it shall thereafter be submitted to the Governor for his approval, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this State. Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. A copy of such charter, certified by the chief executive officer, and authenticated by the seal of such city, setting forth the submission of such charter to the electors and its ratification by them shall, after the approval of such charter by the Governor, be made in duplicate and deposited, one in the office of the Secretary of State, and the other, after being recorded in the office of said Register of Deeds, shall be deposited in the archives of the city; and thereafter all courts shall take judicial notice of said charter. The charter so ratified may be amended by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof (or by petition as hereinafter provided) at a general or special election, and ratified by a majority of the qualified electors voting thereon, and approved by the Governor as herein provided for the approval of the charter.

[28] Ballotopedia, https://ballotpedia.org/Cities_in_Oklahoma.

[29] City of Enid Charter, Part D, Sections 6 and 7, see page 12, supra.

[30] Clapsaddle v. Blevins, see note 16, supra at ¶13.

[31] Cooper v. Dix, 1989 OK 55, ¶5, 771 P.2d 614; Keltch v. Alfalfa County Election Bd., 1987 OK 8,¶1, 737 P.2d 908; Tecumseh v. Shawnee, 1931 OK 81, ¶0, 297 P. 285.

[32] Cooper v. Dix, see note 31, supra; Gardner v. Scott, 1951 OK 319, ¶9, 237 P.2d 863; Grover v. Haskell, 1909 OK 236, ¶0, 104 P. 56.

[33] Cooper v. Dix, see note 31, supra; Hembree v. Stillwell, 1979 OK 109, ¶3, 597 P.2d 1218; Garder v. Scott, see note 32, supra.

[34] Cooper v. Dix, see note 31, supra; Keltch v. Alfalfa County Election Bd., see note 31, supra.

[35] Clapsaddle v. Blevins, supra note 16 at ¶24, Cooper v. Dix, see note 31, supra; Quinn v. City of Tulsa, 1989 OK 112, ¶50 , 777 P.2d 1331.

 

KANE, V.C.J., Concurring in Result:

¶1 I concur in the Court's result finding that the recall petition is legally insufficient, but I believe that the petition fails to comport with the express terms of the Enid city charter, so that further analysis as to compliance with state statute is unnecessary. I also write to address a perceived disconnect between the manner in which the litigants chose to frame the issues presented in the recall election, and what effect (if any) such framing might have on the final result herein.

¶2 The Enid City Charter provides that when a recall petition is circulated:

"...one of the signers of each such paper shall make oath before an officer competent to administer oaths that the statements therein made are true as he believes, and that each signature to the paper to the paper appended is the genuine signature of the person whose name it purports to be. ..."

Ord. No. 2002-51 Section 1, 12-17-2002 approved at referendum March 4, 2003 (emphasis added).

Each page of the proposed recall petition does have a notarized statement attached, vouching for the residency and eligibility to vote of the persons known to the affiant, but the verifications do NOT vouch for the fact that the signatures affixed accurately correspond with the person known to the affiant.[1] In other words, the verifications wholly fail to state that the affiant had personal knowledge that each signature was the genuine signature of the person known to said affiant. Were a hypothetical 'ward 3 resident Jane Roe' to affix the signature of hypothetical 'ward 3 resident John Doe' on the petition, there is nothing in the language presented which would make this verification incorrect. The city clerk and the trial court simply presumed that this did not happen, and this presumption was improper. Absent a statement that the signatures are genuine, the verifications were insufficient and the recall petition was hence deficient under the Enid city charter. Given this fact, the statutory analysis employed by the majority is unnecessary.

¶3 Appellant further suggests that he is the victim of a recall election, resulting from his policy choice to press the mandatory wearing of masks in the midst of a public health threat. Intervenors, on the other hand, opine that the mask mandate is only one of several grounds for recall, including but not limited to their perception that the incumbent has exhibited "...condescending and hostile views and inflammatory rhetoric towards his critics." Intervenor's Answer Brief, 5.

¶4 Regardless of how one may wish to characterize the issues presented in the recall petition, it is important to note that an acceptance of either side's characterization is wholly immaterial to the technical validity of the petition. In other words, in any proper analysis of this dispute, the political agendas of either side are wholly irrelevant to the legal considerations necessary to resolve the disagreement. The petition either comports with the law, or it does not - the soundness of the policies advocated by each side are beyond the purview of this appeal. While the majority appears to take this truth as so fundamental that it did not bear mentioning, since it was addressed in the briefing, I believed it was worth expressly noting.

FOOTNOTES

[1] The hand-written verifications stated, in nearly identical language, the following:

"I (insert name) certify that the signatures were collected from persons known to me, at their home at the time of signing, verified through the https://okvoterportal.okelections.us, or stated that they were a registered voter in Enid Ward 3." Appendix to Objection and Protest to Recall Petition.

 

 

Winchester, J., with whom Rowe, J. joins, dissenting:

I dissent. Enid is a Charter City that specifically allows recall elections. In this matter, the City Clerk verified 87 signatures for a recall, which met the charter requirements. The district court found substantial compliance with the charter and that the City Clerk did not act arbitrarily, fraudulently, or capriciously. I would allow the vote on February 9, 2021.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1925 OK CR 327, 237 P. 145, 31 Okl.Cr. 60, McClure v State
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 8, 737 P.2d 908, 58 OBJ 108, Keltch v. Alfalfa County Election Bd.
Discussed
 1989 OK 55, 771 P.2d 614, 60 OBJ 958, Cooper v. Dix
Discussed
 1989 OK 112, 777 P.2d 1331, 60 OBJ 1791, Quinn v. City of Tulsa
Discussed
 1998 OK 5, 66 P.3d 352, 69 OBJ 265, CLAPSADDLE v. BLEVINS
Discussed at Length
 1998 OK 8, 953 P.2d 1111, 69 OBJ 482, IN THE MATTER OF THE ESTATE OF SNEED
Cited
 1939 OK 238, 90 P.2d 665, 185 Okla. 165, In re INITIATIVE PETITION NO. 9
Discussed
 1914 OK 418, 143 P. 331, 43 Okla. 619, DUNHAM City Clerk v. ARDERY.
Discussed at Length
 1993 OK 71, 853 P.2d 176, 64 OBJ 1721, Simpson v. Dixon
Discussed
 1936 OK 97, 54 P.2d 616, 176 Okla. 145, WHITSON v. CITY OF KINGFISHER
Discussed
 1932 OK 124, 10 P.2d 271, 157 Okla. 54, In re INITIATIVE PETITION No. 2 CUSHING OKLAHOMA. JURNEY et al. v. HARLOW et al.
Discussed at Length
 1933 OK 480, 25 P.2d 64, 165 Okla. 70, STATE ex rel. BASS v. PULLIAM City Clerk et al
Discussed at Length
 1920 OK 7, 186 P. 485, 78 Okla. 47, In re REFERENDUM PETITION NO. 35
Discussed
 1909 OK 236, 104 P. 56, 24 Okla. 707, TOWN OF GROVE v. HASKELL
Discussed
 1965 OK 118, 404 P.2d 1014, COMMUNITY GAS AND SERVICE COMPANY v. WALBAUM
Discussed
 1934 OK 371, 37 P.2d 417, 168 Okla. 632, STATE ex rel. HUNZICKER v. PULLIAM
Discussed
 1931 OK 81, 297 P. 285, 148 Okla. 128, CITY OF TECUMSEH v. CITY OF SHAWNEE
Discussed
 1931 OK 220, 299 P. 162, 149 Okla. 19, FOSTER v. YOUNG
Discussed
 1995 OK 5, 890 P.2d 925, 66 OBJ 338, Thielenhaus v. Thielenhaus
Cited
 1979 OK 109, 597 P.2d 1218, HEMBREE v. CITY OF STILWELL
Discussed
 1926 OK 15, 244 P. 801, 114 Okla. 285, In re STATE QUESTION No. 138 v. STATE TAXPAYERS ASS'N
Discussed
 1951 OK 319, 237 P.2d 863, 205 Okla. 333, GARDNER v. SCOTT
Discussed
 1912 OK 169, 122 P. 173, 31 Okla. 620, CITY COUNCIL OF McALESTER v. MILWEE
Cited
 1912 OK 611, 127 P. 862, 35 Okla. 49, In re INITIATIVE PETITION NO. 23 STATE QUESTION NO. 38.
Discussed
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 15-101, Initiative and Referendum - Powers
Cited
 11 O.S. 15-102, Procedure For Initiative and Referendum in Municipalities
Cited
 11 O.S. 15-104, Publication Announcing the Filing of Petition - Protests
Discussed at Length
 11 O.S. 16-102, Limitations on Applicability of Provisions
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2201, Judicial Notice of Law
Cited
Title 26. Elections
 Cite
Name
Level

 26 O.S. 13-101, County Election Board to Conduct
Cited
 26 O.S. 13-102, Notice of Elections
Discussed at Length
Title 34. Initiative and Referendum
 Cite
Name
Level

 34 O.S. 66, Repealed
Cited
 34 O.S. 3, Petitions and Signatures
Discussed at Length
 34 O.S. 6, Verification of Signatures
Discussed at Length
 34 O.S. 8, Filing Copy of Proposed Petition - Publication - Protest - Hearing and Determination - Signature Gathering Deadline
Discussed
 34 O.S. 24, Only Substantial Compliance Required
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA